**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **FANNIE E. BROWN,**            ) | |
|                                                          ) | |
|       **Plaintiff,**       ) | **Case No.: 1:13-CV-01019** |
| v.                                                    ) | **Judge Randolph D. Moss** |
|                                                          ) | |
| **HOWARD UNIVERSITY HOSPITAL,** ) | |
|                                                          ) | |
|       **Defendant.**       ) | |

## DEFENDANT HOWARD UNIVERSITY HOSPITAL'S
## MOTION FOR SUMMARY JUDGMENT

Defendant Howard University Hospital ("Howard"), by and through undersigned counsel and pursuant to Fed. R. Civ. P. 56 and LCvR 7(h), hereby respectfully moves this Court to enter summary judgment against Plaintiff Fannie E. Brown ("Plaintiff").

In support thereof, Howard refers the Court to the attached Statement of Material Facts Not in Dispute, the attached Memorandum accompanying this Motion, and the exhibits and affidavits cited and incorporated therein. As set forth in detail in those documents, there are no genuine issues of material fact, and Howard is entitled to judgment as a matter of law.

WHEREFORE, Defendant Howard University Hospital respectfully requests that the Court enter summary judgment against Plaintiff Fannie E. Brown and dismiss Plaintiff's Complaint in its entirety with prejudice.

Dated: 05/27/2015	Respectfully submitted,

	*/s/ Lydia Auzoux*
	Lydia Auzoux (#477054)
	Senior Associate General Counsel
	HOWARD UNIVERSITY
	Office of the General Counsel
	2400 Sixth Street, N.W., Suite 321
	Washington, D.C.  20059
	T:  202-806-2650
	F:  202-806-6357
	E-mail: lydia.auzoux@howard.edu

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **FANNIE E. BROWN,** ) | |
| ) | |
| Plaintiff, ) | Case No.:  1:13-CV-01019 |
| v. ) | Judge Randolph D. Moss |
| ) | |
| **HOWARD UNIVERSITY HOSPITAL,** ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT HOWARD UNIVERSITY HOSPITAL'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

Pursuant to LCvR 7(h)(1), Defendant Howard University Hospital ("Howard") states that the following genuine issues of material fact are not in dispute:

1. Plaintiff first became employed by Howard in January of 2011 as the Director of Graduate Medical Education ("Director of GME").  *See* Brown Depo. Tr. 9:14-16, 16:22-17:2, a copy of which is attached hereto and incorporated herein as Exhibit 1.

2. Plaintiff was approximately sixty-years old at the time she gained employment at Howard and was sixty-two-years-old at the time of her termination.  [*See* Dkt. 1 ¶¶ 8, 10, 20 and 21.]

3. The basic function of Plaintiff's position was to provide professional/business support to Howard University's Graduate Medical Education Division ("GME").  *See* Howard University Hospital Position Description, Director of GME, a copy of which is attached hereto and incorporated herein as Exhibit 2.

4. From January of 2011 until October of 2012, Plaintiff's immediate supervisor was Dr. Robert Newton ("Dr. Newton"), who served in dual positions as the Designated Institutional

Official ("DIO") and Associate Vice President for Clinical Affairs and Quality.  *See* Sealy Aff. ¶ 2, a copy of which is attached hereto and incorporated herein as Exhibit 3.

5. Plaintiff concedes that Dr. Newton did not treat Plaintiff differently or negatively on the basis of Plaintiff's age.  *See* Ex. 1 at 28:7-12.

6. As of October of 2012, Plaintiff's immediate supervisor became Dr. Peter L. Sealy, who served in triple positions as an Associate Professor of Medicine, the Associate Dean for GME, and the DIO.  *See* Ex. 3 at ¶¶ 1 and 6.

7. Other than what can best be described as a single, isolated, and non-descript awkward moment between Plaintiff and Dr. Sealy, Plaintiff makes no allegation that Dr. Sealy engaged in any direct discrimination against her based on her age during her tenure except for her termination.  *See* Ex. 1 at 32:6-36:10.

8. To the contrary, Plaintiff conceded that Dr. Sealy personally and publicly respected her abilities.  *See id.* at 35:11-14.

9. As early as March of 2012 and prior to Dr. Sealy's official tenure, a restructuring of the DIO and of Associate Dean for GME positions specifically and of the GME generally already had been contemplated.  *See* Transition Plan for DIO/Associate Dean for Graduate Medical Education, a copy of which is attached hereto and incorporated herein as Exhibit 4.

10. The intent of the restructuring was to separate the functions previously held by Dr. Newton so as to allow the DIO to focus exclusively on the GME enterprise.  *See* Ex. 3 at ¶¶ 2-3.

11. Upon his appointment and after directly assessing the needs of the GME office, Dr. Sealy made the official recommendation to restructure the personnel organization chart within that office.  *See id.* at ¶4.

12. As part of the restructuring, Dr. Sealy recommended the elimination of Plaintiff's position of Director of GME due to significant overlap between the roles of the DIO and the Director of GME. *See id.* at ¶ 5.

13. The proposed restructuring and elimination of Plaintiff's position was part of a larger restructuring of Health Sciences and the Hospital in the face of increased negative media attention and decreased investor confidence. *See id.* at 9; *see* Notice of Separation from Howard to Brown, a copy of which is attached hereto incorporated herein as Exhibit 5

14. Consequently, on December 27, 2012, Plaintiff's position was eliminated, and she was separated from Howard. *See id.* ¶10; Ex. 5.

15. However, having eliminated the supervisory position of Director of GME, Dr. Sealy still required support in his position as DIO and Associate Dean for GME. *See* Ex. 3 at ¶ 11..

16. Thus, Dr. Sealy recommended the creation of an intermediate support position, GME Administrator and Development Manager ("GME A&D Manager"), to provide support for the DIO/Associate Dean of GME as well as to provide a combination of hands-on experience and program management skill sets. *See id.* at ¶ 12.

17. That GME A&D Manager position was created, and a written position description was posted on August 29, 2013. *See* Howard University Hospital Position Description, GME A&D Manager, a copy of which is attached hereto and incorporated herein as Exhibit 6.

18. The salary of the eliminated supervisory position of Director of GME was approximately $125,000.00. *See* Ex. 1 at 15:9-18; Ex. 3 at ¶ 13.

19. The salary of the created GME A&D Manager was approximately $85,000.00, which reflected both the decreased responsibilities of the new position as well as served the

ancillary benefit of a budget reduction. *See* Ex. 3 at ¶ 14; Offer Letter from Howard to Thompson, a copy of which is attached hereto and incorporated herein as Exhibit 9.

20. Alonda Thompson ("Ms. Thompson") was an internal and the successful candidate for the position of GME A&D Manager. *See* Thompson Aff. ¶ 7, a copy of which is attached hereto and incorporated herein as Exhibit 7; Howard In-House Employment Application, a copy of which is attached hereto and incorporated herein as Exhibit 8; Ex. 9.

21. Since February of 2009, Ms. Thompson had been a Program Manager under the supervision of the Program Director of Internal Medicine. *See* Ex. 7 at ¶ 1; Ex. 8.

22. As of September 23, 2013, Ms. Thompson assumed the duties, title, and salary of GME A&D Manager. *See* Ex. 9; Howard Personnel Action Form, a copy of which is attached hereto and incorporated herein as Exhibit 10.

23. At the time Ms. Thompson was selected for the position of GME A&D Manager, she was under the age of forty (40). [*See* Dkt. 1 ¶ 30.]

Dated: 05/27/2015                                   Respectfully submitted,


                                                    */s/ Lydia Auzoux*
                                                    Lydia Auzoux (#477054)
                                                    Senior Associate General Counsel
                                                    HOWARD UNIVERSITY
                                                    Office of the General Counsel
                                                    2400 Sixth Street, N.W., Suite 321
                                                    Washington, D.C.  20059
                                                    T:  202-806-2650
                                                    F:  202-806-6357
                                                    E-mail: lydia.auzoux@howard.edu

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FANNIE E. BROWN, ) | |
| ) | |
| Plaintiff, ) | Case No.: 1:13-CV-01019 |
| v. ) | Judge Rudolph Contreras |
| ) | |
| HOWARD UNIVERSITY HOSPITAL, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT HOWARD UNIVERSITY HOSPITAL'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant Howard University Hospital ("Howard"), by and through undersigned counsel and pursuant to Fed. R. Civ. P. 56 and LCvR 7(h), hereby respectfully moves this Court to enter summary judgment against Plaintiff Fannie E. Brown ("Plaintiff").

**I.    BACKGROUND**

Howard adopts and incorporates by reference herein its Statement of Material Facts Not in Dispute ("SOMF").

Plaintiff filed her single-count Complaint on June 6, 2014, alleging age discrimination under the Age Discrimination in Employment Act, 29 U.S. § 623 ("ADEA"). Plaintiff makes no claims of direct discrimination during her employment as Director of GME. *See* SOMF at ¶¶ 5, 7, and 8. Instead, Plaintiff's sole claim is that the elimination of her position was motivated by age animus; that she was qualified for the newly-created position of GME A&D Manager, which ultimately was occupied by Ms. Thompson; and that the age animus is demonstrated by the appointment of Ms. Thompson, who was under the age of forty (40) at the time. [*See* Dkt. 1 ¶¶ 30, 32, and 38.] Essentially, Plaintiff claims that the newly-created position was in fact her

eliminated position so that the restructuring was a mere pretext for placing Ms. Thompson in Plaintiff's job.  [*See id.* ¶¶ 29 and 34-36.]

## II.   LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 56, summary judgment should be granted if the "pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those "that might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at 255.

The non-moving party's opposition must consist of more than mere unsupported allegations or denials, and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  The non-moving party is required to provide evidence that would permit a reasonable jury to find in his favor.  *Paquin v. Federal Nat'l Mortg. Ass'n*, 119 F.3d 23, 27-28 (D.C. Cir. 1997).  If the evidence is "merely colorable" or "not significantly probative," summary judgment may be granted.  *Liberty*, *supra*, 477 U.S. at 249-50.

## III.   ARGUMENT

In pursuing her ADEA claim, Plaintiff may demonstrate discrimination through either direct or circumstantial evidence.  *Dobbs v. Roche*, 329 F. Supp. 2d 33, 40 (D.D.C. 2004) (citing *Dunaway v. Int'l Bhd. of Teamsters*, 354 U.S. App. D.C. 36, 310 F.3d 758, 763 (D.C. Cir. 2002)).

Since there is no direct evidence of age discrimination in the instant matter (*see* SOMF at ¶¶ 5, 7, and 8), the *Dobbs* court provides a veritable primer on the required analysis:

When the plaintiff relies on circumstantial evidence, the court, in resolving the defendant's motion, must therefore "apply the framework developed in the context of Title VII litigation. That is, where direct evidence of discriminatory intent is not available, a party may establish unlawful age discrimination by relying on the familiar burden-shifting scheme" known as the *McDonnell Douglas* framework. *Hall v. Giant Food, Inc.*, 336 U.S. App. D.C. 63, 175 F.3d 1074, 1077 (D.C. Cir. 1999) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973)). Courts routinely apply the *McDonnell Douglas* framework to ADEA claims. *Id.* (applying the *McDonnell Douglas* framework to ADEA claims); *accord Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 140-42, 147 L. Ed. 2d 105, 120 S. Ct. 2097 (2000); *Paquin v. Fannie Mae*, 326 U.S. App. D.C. 224, 119 F.3d 23, 26 (D.C. Cir. 1997).

The Supreme Court explained the framework as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection" . . . . Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by the preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination . . . . The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.

*Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981) (internal citations omitted) (quoting *McDonnell Douglas*, 411 U.S. at 802).

Thus, the plaintiff must first establish a prima facie case of prohibited discrimination. *See McDonnell Douglas*, 411 U.S. at 802; *Aka v. Washington Hosp. Ctr.*, 332 U.S. App. D.C. 256, 156 F.3d 1284, at 1288. To establish a prima facie case of age discrimination under the ADEA, the plaintiff must demonstrate "facts sufficient to create a reasonable inference that age discrimination was a determining factor in the employment decision." *Cuddy v. Carmen*, 224 U.S. App. D.C. 287, 694 F.2d 853, 856-57 (D.C. Cir. 1982); *Miller v. Lyng*, 660 F. Supp. 1375, 1377 (D.D.C. 1987). Such an inference is created if the plaintiff can show (1) he belongs to the statutorily protected age group; (2) he was qualified for his position and was performing his job well enough to meet his employer's legitimate expectations; (3) he suffered an adverse employment action despite his qualifications and performance; and (4) he was disadvantaged in favor of

3

> similarly situated younger employees. *Reeves*, 530 U.S. at 142; *Hall*, 175 F.3d at 1077; *Paquin*, 119 F.3d at 26 (citing *Coburn v. Pan Am. World Airways, Inc.*, 229 U.S. App. D.C. 61, 711 F.2d 339, 342 (D.C. Cir. 1983)). "The burden of establishing a prima facie case of disparate treatment is not onerous." *Burdine*, 450 U.S. at 253.
>
> If the plaintiff establishes a prima facie case, a presumption then arises that the employer unlawfully discriminated against the employee. *Id.* at 254. To rebut this presumption, the employer must articulate a legitimate, nondiscriminatory reason for its action. *Id.* The employer "need not persuade the court that it was actually motivated by the proffered reasons." *Id.* Rather, "the defendant must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507, 125 L. Ed. 2d 407, 113 S. Ct. 2742 (1993).
>
> If the employer successfully presents a legitimate, nondiscriminatory reason for its actions, "the McDonnell Douglas framework - with its presumptions and burdens - disappears, and the sole remaining issue is discrimination *vel non*." *Lathram*, 357 U.S. App. D.C. 413, 336 F.3d 1085, 1088 (internal citations omitted). At this point, to survive summary judgment, the plaintiff "must show that a reasonable jury could conclude from all the evidence that the adverse employment decision was made for a discriminatory reason." *Id.* (citing *Aka,* 156 F.3d at 1290). The court must consider whether the jury could infer discrimination from (1) the plaintiff's prima facie case, (2) any evidence the plaintiff presents to attack the employer's proffered explanation, and (3) any further evidence of discrimination that may be available to the plaintiff. *Waterhouse v. District of Columbia*, 353 U.S. App. D.C. 205, 298 F.3d 989, 992-93 (D.C. Cir. 2002) (quoting *Aka*, 156 F.3d at 1289). The plaintiff need not present evidence in each of these categories in order to avoid summary judgment. *Aka*, 156 F.3d at 1289. Rather, the court should assess the plaintiff's challenge to the employer's explanation in light of the total circumstances of the case. *Id.* at 1291.

*Dobbs*, 329 F. Supp. 2d at 39-41.

As Howard has proffered a legitimate, non-discriminatory explanation for Plaintiff's termination, the only relevant inquiry is whether Plaintiff has "produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of

4

[age] . . . ." *Evans v. Sebelius*, 716 F.3d 617, 620 (D.C. Cir. 2013). As part of this inquiry, the Court examines whether "there is evidence from which a reasonable jury could find that the employer's stated reason for the [decision] is pretext and any other evidence that unlawful discrimination was at work." *Barnett v. PA Consulting Grp., Inc.*, 715 F.3d 354, 358 (D.C. Cir. 2013). It must be noted, though, that "the Court is only concerned with whether the action was discriminatory and it cannot 'act as a super-personnel department that reexamines an entity's business decisions' absent discriminatory motive." *Id.* at 359 (citation omitted).

### A. Plaintiff's Separation from Employment

In this case, Howard concedes that Plaintiff is a member of a protected class based on her age and further concedes that Plaintiff suffered an adverse employment action with respect to her separation from employment. Importantly, however, Plaintiff cannot demonstrate that her separation from employment was based on age or that there is an inference of discriminatory action based on age.

To the contrary and according to her own testimony, Plaintiff's skills, abilities, and experience were valued by both her supervisors, Dr. Newton and Dr. Sealy. *See* SOMF at ¶¶ 5, 7 and 8. To be sure, Plaintiff's entire theory of the case rests on pure speculation and conclusory allegations that she was ousted in favor of a younger current employee. However, Plaintiff cannot create disputed material facts or triable issues from mere allegations and speculations.

The salient, unassailable, and irrefutable facts are as follows: (1) Howard had contemplated a written and actual restructuring plan since as early as March of 2012 (*see* SOMF at ¶¶ 9-11); (2) the restructuring and elimination of Plaintiff's position as Director of GME approximately nine (9) months later was based on the legitimate, non-discriminatory basis of increasing operational efficiencies, removing redundancies, and addressing ongoing fiscal

concerns of Howard University in general and the Hospital in particular (*see* Ex. 1 at ¶ 8); and (3) the restructuring and elimination of Plaintiff's position was part of a larger restructuring of Health Sciences and the Hospital in the face of increased local and national media attention on Howard's questioned financial stability and decreased investor confidence (*see id.* at ¶ 9; Ex. 5).

Given the dearth – in fact, utter absence – of Plaintiff's evidence to refute Howard's proffered legitimate and non-discriminatory decision to terminate her employment, Plaintiff has not and cannot offer any evidence from which a reasonable jury could conclude that Howard's ultimate and legitimate employment decision was a pretext masquerading as age animus.

### B.  Plaintiff Cannot Demonstrate that She Was Treated Differently from Similarly Situated Employees

Additionally, Plaintiff cannot demonstrate that she was treated differently from *similarly situated employees* who were/are not part of her protected class. *See Evans v. Sebelius*, 674 F. Supp.2d 228, 242 (D.D.C. 2009) (describing how a plaintiff can establish an inference of discrimination). Plaintiff has offered no comparator evidence, because there is none. As the former Director of GME, admittedly, Plaintiff had no comparators within the organizational chart.

Nonetheless, Plaintiff offers Ms. Thompson simply because of her younger age to assert that a "similarly situated employee" functionally replaced Plaintiff in her position as Director of GME. This assertion, though, is belied by the facts and the description of the restructured position.

At the time of her selection for the GME A&D Manager position, Ms. Thompson was employed as a Program Manager under the direct supervisor of the Program Director of Internal Medicine, Dr. Faria Farat ("Dr. Farat"). *See* Ex. 3 at ¶¶ 15 and 18l Ex. 7 ¶¶ 1 and 4. In that

capacity, she earned $66,186.00 per annum, almost half of Plaintiff's salary. *See* SOMF at ¶ 18; Ex. 8.

In or about March of 2013, Ms. Thompson was required to relocate her office at the direct behest of Dr. Shirley McDonald-Pinkett, the Chair of the Department of Internal Medicine and Dr. Farat's supervisor. *See* Ex. 3 at ¶ 16; Ex. 7 at ¶ 2. While Dr. Sealy offered an accommodation to Ms. Thompson to provide office space in his department, Ms. Thompson continued to operate in her assigned role as Program Manager under the direct supervision of Dr. Farat. *See* Ex. 3 at ¶¶ 16-18; Ex. 7 at ¶¶ 2-4.

Plaintiff's assertions – particularly when she was not in a position to make any such assertions based on personal knowledge or belief after her separation – that Ms. Thompson was operating in the role of GME A&D Manager are unavailing. *See* Ex. 1 at 48:11-52:11. Regardless of Plaintiff's assertions or suppositions, Ms. Thompson did not assume the duties and title of GME A&D Manager until after the position was posted and she accepted the position as of September 23, 2013 with a salary reduced by over thirty percent (30%) of that earned by Plaintiff's eliminated position. *See* Ex. 3 at ¶ 19; Ex. 7 at ¶ 9; Ex. 9; Ex. 10. Ms. Thompson was selected for the position in light of her demonstrated combination of skills for the job, particularly as a demonstrated and long-term employee of Howard. *See* Ex. 3 at ¶¶ 20-21.

Under these circumstances, Ms. Thompson is hardly a *similarly situated employee* so as to raise an inference of discrimination on the part of Howard and/or to rebut Howard's legitimate business reason in justifying Plaintiff's termination. To be sure, Ms. Thompson's assumption of the GME A&D Manager position was noted as a "promotion" within Howard's records. *See* Ex. 10. In other words, Ms. Thompson was not a *similarly situated employee* for purposes of Plaintiff's age discrimination claim – she was a junior employee whose promotion to GME A&D

Manager still resulted in her being a junior employee to Plaintiff's prior position in terms of salary and responsibilities. In short, with no useful comparators or legally significant "similarly situated employees," Plaintiff has not and cannot establish her burden of proof under any legal framework.

### C. Plaintiff's Complaint that She Was Qualified for but Did not Obtain the Newly-Created Position Should be Rejected, as She Never Searched for or Applied for the Job

Plaintiff appears to complain that she not only was terminated from her position as Director of GME but that she should have been considered for the newly-created position of GME A&D Manager over a younger applicant. [*See* Dkt. 1 at ¶¶ 32 and 34-36.] However, Plaintiff conceded that, after her termination, she: (1) did not search for any other positions within Howard; (2) was unaware of the job posting for the newly-created position of GME A&D Manager; (3) was unaware of the reduced salary requirements for the GME A&D Director; and (4) *did not actually apply for the position of GME A&D Director*. *See* Ex. 1 at 48:12-50:2, 67:12-68:17. In point of fact, Plaintiff relocated to Texas a mere four (4) or so months after her employment with Howard terminated. *See id*. at 12:14-15. To be sure, not only has Plaintiff failed to mitigate her damages by failing to explore her options outside of the narrow environment of higher education (*see* Ex. 1 at 10:22-12:11), Plaintiff cannot complain of any lack of consideration for the position of the newly-created job about which she never inquired and for which she never applied. *Id.*

### IV. CONCLUSION

WHEREFORE, for the foregoing reasons, Defendant Howard University Hospital respectfully requests that the Court enter summary judgment against Plaintiff Fannie E. Brown and dismiss Plaintiff's Complaint in its entirety with prejudice.

Dated: 05/27/2015                              Respectfully submitted,


                                                */s/ Lydia Auzoux*

Lydia Auzoux (#477054)
Senior Associate General Counsel
HOWARD UNIVERSITY
Office of the General Counsel
2400 Sixth Street, N.W., Suite 321
Washington, D.C.  20059
T:  202-806-2650
F:  202-806-6357
E-mail:  lydia.auzoux@howard.edu

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **FANNIE E. BROWN,** ) | |
| ) | |
| Plaintiff, ) | Case No.: 1:13-CV-01019 |
| v. ) | Judge Randolph D. Moss |
| ) | |
| **HOWARD UNIVERSITY HOSPITAL,** ) | |
| ) | |
| Defendant. ) | |

### ORDER

Upon consideration of Defendant Howard University Hospital's Motion for Summary Judgment; Plaintiff's Opposition thereto; Defendant Howard University Hospital's Reply in support of its Motion; and any oral argument thereupon, it is this _____ day of _____ _____, 2015,

**ORDERED** that Defendant Howard University's Motion for Summary Judgment be and is hereby **GRANTED** for the reasons set forth in the Motion and the Reply; and it is further

**ORDERED** that judgment with prejudice on Plaintiff's Complaint be and is hereby **ENTERED** against Plaintiff Fannie E. Brown and in favor of Defendant Howard University Hospital; and it is further

**ORDERED** that this case be and hereby is **DISMISSED** with prejudice.

**SO ORDERED**.

                                                                 THE HONORABLE RANDOLPH D. MOSS

Copies to:

Morris E. Fischer, Esquire
*Counsel for Plaintiff*

Lydia Auzoux, Esquire
*Counsel for Defendant Howard University*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Defendant Howard University Hospital's Motion for Summary Judgment; the Statement of Material Facts Not in Dispute in support thereof; the Memorandum of Points and Authorities in support thereof; attached Exhibits 1 through 10; and proposed form of Order were served via CM/ECF on this 27th day of May, 2015, to:

                            Morris E. Fischer
                            *Counsel for Plaintiff*

                                      */s/ Lydia Auzoux*
                                      Lydia Auzoux