# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| FANNIE E. BROWN, Ph.D. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No.: 14-1019 (RDM) |
| HOWARD UNIVERSITY HOSPITAL, | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S OPPOSITION TO
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, Fannie Brown, by and through his undersigned counsel, hereby respectfully opposes and responds to Defendant's Motion for Summary Judgment. As set forth in Plaintiff's accompanying Memorandum of Points and Authorities, there are material facts in dispute, which should allow this case to proceed to trial. In support thereof, Plaintiff submits the attached Opposition.

Dated: June 25, 2015

Respectfully submitted,


_____/s/_____
Morris E. Fischer, Esq. Bar No. 490369
Michael C. Fallings, Esq. Bar No. 19389
Morris E. Fischer, LLC
1400 Spring Street, Suite 350
Silver Spring, MD 20910
(301) 328-7631 (telephone)
(301) 328-7638 (facsimile)
morris@mfischerlaw.com
Attorneys for Plaintiff Fannie Brown

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FANNIE E. BROWN, Ph.D.      ) | |
|               ) | |
|        Plaintiff,     ) | |
|               ) | |
|         v.        ) | Civil Action No.: 14-1019 (RDM) |
|               ) | |
| HOWARD UNIVERSITY HOSPITAL,   ) | |
|               ) | |
|        Defendant.    ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, Fannie Brown, Ph.D. (hereinafter "Plaintiff" or "Dr. Brown") has brought a lawsuit against her former employer, Howard University Hospital (hereinafter "Defendant" or "HUH") for age discrimination under the Age Discrimination and Employment Act (hereinafter "ADEA") because HUH fired her on her 62nd birthday, despite her excellent performance, and replaced her with a thirty-seven-year-old ("37") individual (Alonda Thompson). The administrative record, written discovery, deposition of Dr. Brown, and the entire record herein have set forth material facts supporting Dr. Brown's age discrimination claim.[1] Despite this evidence, HUH brings the present motion for summary judgment to dismiss Dr. Brown's claim before trial, arguing that it did not replace Dr. Brown but eliminated her position because it was duplicative; and later created a new, different position for a qualified individual. However, as discussed in detail later in this motion, this Court should not accept Defendant's story and should deny its summary judgment motion because:

---

[1] Defendant concedes that Dr. Brown was fired on her 62nd birthday and met her performance expectations at the time of her termination.

1

- The records proves HUH replaced Dr. Brown with Alonda Thompson because Ms. Thompson took on Dr. Brown's job responsibilities.

- The evidence demonstrates that contrary to Defendant's assertions, Ms. Thompson replaced Dr. Brown within two ("2") months of Dr. Brown's termination.

- HUH's reasons given for termination are false as Dr. Brown's position was not duplicative or too costly to HUH.

- Around the same time HUH fired Dr. Brown, it eliminated the positions of two younger employees, but gave these employees new positions.

For these and the reasons stated in this motion, Defendant's motion should be denied and this Court should set this matter for trial on the merits.

## I.   PLAINTIFF'S STATEMENT OF FACTS

### A.   Dr. Brown's Employment with HUH.

Dr. Brown began employment at HUH in January 2011, when she was sixty ("60") years old. Deposition Transcript of Fannie Brown (hereinafter "Brown Dep.")[2] at 7, 9.[3] Dr. Brown's official position title at HUH was Director, Graduate Medical Education. Brown Dep. at 17. Graduate Medical Education (hereinafter "GME") is a type of formal medical education, which prepares physicians for the independent practice of medicine in a particular specialty or subspecialty. *See* Accreditation Council for Graduate Medical Education Glossary of Terms[4] (hereinafter "ACGME Glossary of Terms") at 5. As the Director of GME, Dr. Brown's primary responsibility was to help maintain HUH's accreditation with the Accreditation Council for Graduate Medical Education (hereinafter "ACGME"). Director, Graduate Medical Education

---

[2] Excerpts from Dr. Brown's Deposition Transcript are filed herewith as **Exhibit 1**.
[3] HUH is division of Howard University in Washington DC. Plaintiff's Complaint at ¶ 14. Dr. Brown's Complaint is filed herewith as **Exhibit 2**.
[4] The ACGME Glossary of Terms is filed herewith as **Exhibit 3**.

Position Description (hereinafter "GME position description") at 3-4.[5]  Dr. Brown's job duties also included: oversight of the educational curriculum and resident orientation for residency program coordinators; supervision of the GME office staff; review of GME policies and procedures; preparation of the Program Information Form ("PIF") for accreditation site visits; revision of the House Staff Manual to ensure compliance with ACGME program requirements; responding to inquiries concerning the policy or requirements of the ACGME program; signing off on reimbursement request and invoices; and organization of the GME retreat.  *Id.*; *see also* Brown's Dep. at 17-21.  To obtain the GME position, Dr. Brown must have possessed a Master's Degree or Ph.D. and had at least seven years of GME experience or five years' experience as a program director.  *See* **Exhibit 4**; GME position description at 3-4.  Dr. Brown did indeed meet these criteria, as she had over twenty years of GME experience and had earned both a master's degree and Ph.D.  Brown Dep.  at 8.  At the time of her appointment, Dr. Brown's salary was around $120,000.  *Id.* at 15.

Furthermore, when Dr. Brown started working at HUH, her supervisor was Dr. Robin Newton (hereinafter "Dr. Newton").  *Id.* at 21.  Dr. Newton's job titles were "Senior Associate VP for Clinical Affairs & Quality" and "Designated Institutional Official."  *Id.* at 21-22.  Dr. Newton previously performed Dr. Brown's job duties prior to Dr. Brown's hiring.  *Id.* at 42.  In Dr. Newton's role as the Designated Institutional Official (hereinafter "DIO"), she worked with Dr. Brown to ensure that the GME programs complied with the accrediting body requirements. *Id.* at 22.  As Dr. Brown's supervisor, Dr. Newton never negatively commented on Dr. Brown's performance.  *Id.*

---

[5] The GME position description is filed herewith as **Exhibit 4**.

B.     **Dr. Peter Sealy Takes Over DIO duties**.

In March of 2012, HUH officials proposed a transition plan for the DIO office.  *See* Transition Plan.[6]  This plan called for Dr. Peter Sealy (hereinafter "Dr. Sealy"), the then Associate Professor of Medicine & Director of Internal Medicine Residency Program, to take over the DIO duties from Dr. Newton.  *See Id.*; *see also* **Exhibit 2**; Pl. Compl.  ¶ 25.  In addition, the transition plan proposed creating a new GME Administrator/Project Manager position in the DIO office, which included duties of providing assistance to the DIO, performing GME budget management, direct GME reimbursement tracking, and organizing an Educational GME Conference.  *See* **Exhibit 5**; Transition Plan at 3.  At this time, Dr. Brown was performing many of these duties.  *Id.*; *see generally* **Exhibit 4**; GME position description.  Finally, the plan set forth that Alonda E. Thompson (hereinafter "Ms. Thompson"), the then program manager in Internal Medicine under Dr. Sealy, would join Dr. Sealy in the DIO office.  *See* Transition Plan at 4; *See* Plaintiff's Dep. at 45.  Concerning Ms. Thompson, at the time of the proposed transition plan in 2012 she was around thirty-seven years old and was making $66,186.00 as a program manager.  Defendant's Interrogatory Responses[7]; Ms. Thompson personnel file[8].  Ms. Thompson supervisor was Dr. Sealy.  **Exhibit 7***;* Ms. Thompson personnel file at 1.

Part of this transition plan came to fruition when, on August 9, 2012, HUH offered Dr. Sealy the DIO position for the GME program.  *See* Offer/Acceptance Letter to Dr. Sealy.[9]  The letter noted that Dr. Sealy would not be formally appointed until September 2012.  *Id.* at 2.  Thus, Dr. Sealy officially became the DIO and Dr. Brown's supervisor in September 2012.  Brown Dep. at 28.  When Dr. Sealy became Dr. Brown's supervisor, her duties did not change as

---

[6] The transition plan dated March 26, 2012 is filed herewith as **Exhibit 5**.
[7] Relevant portions of Defendant's interrogatory responses are filed herewith as **Exhibit 6**.
[8] Ms. Thompson's personnel file is filed herewith as **Exhibit 7**.
[9] The Acceptance letter for the DIO position to Dr. Sealy is filed herewith as **Exhibit 8**.

Director of GME.  Brown Dep. at 29-31.  Accordingly, she regularly interacted with now, the new DIO, Dr. Sealy, through e-mail and physical communication.  *Id.*  As Dr. Brown's supervisor, Dr. Sealy never negatively commented on her performance.  *Id.* at 41.

C.   **Dr. Sealy fires Dr. Brown on her 62nd Birthday.**

On December 6, 2012, Dr. Sealy hand delivered a notice of separation letter to Dr. Brown.  *Id.* at 36-37.  The notice indicated that Dr. Brown's employment with HUH would be terminated effective December 27, 2012, her 62nd birthday.  *Id.*  At the time of her termination, Dr. Brown's salary was $125,000.  Brown Dep. at 15.  Dr. Sealy never disciplined Dr. Brown nor gave any indication that Ms. Brown was not performing her job well prior to delivering the separation letter.  *Id.*  In fact, this was the first time Dr. Brown was aware that she was being fired.  *Id.*  When Dr. Brown asked Dr. Sealy why she was being terminated he could not give a straightforward reason.  *Id.* at 41.  Dr. Sealy did acknowledge, however, that Dr. Brown's performance had nothing to do with her firing and that her experience in graduate medical education was appreciated.  *Id.*  The only purported explanation Dr. Sealy could come up with was that he was going to take over Dr. Brown's job duties.  *Id.* at 41-42.  At the time, Dr. Brown expressed doubt that Dr. Sealy actually planned to take over her duties since Dr. Sealy was not going to be working full-time in the DIO position.  *Id.*  41-43.  During the same conversation, Dr. Brown also asked Dr. Sealy if he would make Ms. Thompson a member of the GME staff.  *Id.* at 45.  Dr. Sealy did not respond.  *Id.*

Immediately after her termination, Ms. Brown started applying for jobs.  Brown Dep. at 11.  In particular, Ms. Brown frequently applied for jobs in the graduate medical education field.  *Id.* at 11.  Ms. Brown applied for one GME job in Washington DC before she relocated to Texas in May 2013.  *Id.* at 12-13.  Ms. Brown relocated to Texas because she could not afford the cost

of living in Washington DC.  *Id.* at 13.  Before relocating to Texas, Ms. Brown believed that Ms. Thompson had already replaced her and was fulfilling the role of GME Administrator and Development manager.  *Id.* at 50-52.  After moving to Texas, Ms. Brown looked for jobs mainly in Texas and did not apply for jobs in DC.  *Id.* at 67-68.

> D.  **Ms. Thompson replaces Dr. Brown.**

Soon after her firing, Dr. Brown learned that Dr. Sealy did indeed replace her with Ms. Thompson, who was in her thirties.  *Id.* at 50-51.  Specifically, Dr. Brown found out through Triza Crittle, the senior clinical librarian at HUH at the time, that Ms. Thompson had moved into the GME office as early as February 8, 2013.  *See* Emails between Fannie Brown and Triza Crittle (hereinafter "Brown & Crittle Emails")[10] at 1.  Moreover, contrary to Defendant's assertions, Ms. Crittle informed Dr. Brown that Ms. Thompson had assumed the GME Administrator and Development Manager position in March 2013 and was performing the job duties that Dr. Brown previously performed.  *Id.* at 2.  Ms. Thompson had in fact changed her position title in her e-mail to "GME Administrator and Development manager."  *Id.*  The GME Administrator and Development manager (hereinafter "GME A&D manager") position description set forth many of the same job duties that Dr. Brown had previously performed.  *See* GME A&D manager position description[11]; *see also* Brown Dep. at 54-55.  For instance, both positions had job responsibilities of assisting the DIO with maintaining HUH's accreditation with the ACGME, overseeing the residency and fellowship programs, responding to inquiries concerning the policy or requirements of the ACGME program, revising GME policies & procedures, coordinating GME institutional policies, and supervising the GME office staff and program managers.  *See* **Exhibit 4 & 10**; *see also* Brown Dep. 54-64.  Furthermore, the positions

---

[10] The Brown & Crittle emails are filed herewith as **Exhibit 9**.
[11] The GME A&D manager position description is filed herewith as **Exhibit 10**.

had similar qualifications in that both required at least a master's degree and five years or more of GME experience.  *Id.* Ms. Thompson had five years of GME experience in her job roles in the Department of Internal Medicine.  *Id.*; *see also* **Exhibit 7**; Ms. Thompson's personnel file at 2.

**E.**     **Dr. Brown Contacts the EEOC to Allege Age Discrimination.**

Therefore, Dr. Brown immediately contacted the EEOC office to allege age discrimination because she was fired despite her quality performance and was replaced by a younger employee.  *See* Intake Questionnaire dated April 19, 2013[12].  In addition, Dr. Brown explained that HUH eliminated the positions of two employees in their thirties, Chassydi Butts & Vincent Walford, but gave them each different positions.  *Id.* at 5.  HUH learned on May 2, 2013, that Dr. Brown filed a charge of age discrimination with the EEOC in regards to her termination.  *See* Notices of Charge of Discrimination at 1.[13]  Dr. Brown filed her formal complaint of age discrimination against HUH on July 26, 2013.  *See* Formal Complaint of Discrimination.[14]  The EEOC notified HUH of Dr. Brown's formal charge of discrimination on August 13, 2013 and instructed it to provide a position statement by August 27, 2013.  *See* **Exhibit 12**; Notices of Charge of Discrimination at 2.  Instead of complying with the EEOC's instructions, HUH advertised the GME administrator and development manager position, as if it were an open position, on August 29, 2013.  *See* **Exhibit 10**; GME A&D manager position description.  Ms. Thompson, who had already been performing the position's job duties and working under this same position title since March 2013, was undoubtedly given the position. Brown & Crittle emails at 4.  In addition, Ms. Thompson was given an increase in salary, to

---

[12] Dr. Brown's EEOC intake questionnaire is filed herewith as **Exhibit 11**.
[13] The Notice of Charge of Discrimination to HUH is filed herewith as **Exhibit 12**.
[14] Dr. Brown's formal complaint of discrimination is filed herewith as **Exhibit 13**.

$84,169 (up from $66,186) when she assumed the position. *See* Offer letter to Alonda Thompson.[15]

HUH did not submit a position statement in response to Dr. Brown's EEOC complaint until February 2014, several months after it officially advertised the GME A&D manager position. *See* Howard Position Statement at 1.[16]  In its position statement HUH acknowledged that it considered creating the GME A&D Manager position in April 2013. *Id.* at 5.  In addition, HUH acknowledged that the GME Administrator position holds similar responsibilities of Dr. Brown's prior position. *Id.*

## ARGUMENT

### A.    Summary Judgment Standard

In ruling on a motion for summary judgment, the Court must view the facts, and the inferences to be drawn therefrom, in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party is entitled to a grant of summary judgment only if no issues of material fact remain for the trier of fact to determine at trial. *Matsushita Elec. Indust.  Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Martin v. Locke*, 659 F. Supp. 2d 140, 145 (D. D.C. 2009).  Thus, "[s]ummary judgment is not appropriate when there is an issue of fact for a jury to determine at trial, which is the case when there is sufficient evidence favoring the non-moving party upon which a jury can return a verdict for that party. *Anderson*, 477 U.S. 242, 248 (1986).

The D.C. Circuit has directed that because it is difficult for a plaintiff to establish proof of discrimination, the court should view summary judgment motions in such cases with special caution. *Johnson v. Digital Equip. Corp.*, 836 F. Supp. 14, 18 (D.D.C.1993).  Specifically, in

---

[15] HUH's offer letter to Alonda Thompson for the GME A&D position is filed herewith as **Exhibit 14**.
[16] Howard's position statement is filed herewith as **Exhibit 15**.

considering on a motion for summary judgment in an ADEA case, the court must consider whether the jury could infer discrimination from (1) the plaintiff's prima facie case, (2) any evidence the plaintiff presents to attack the employer's proffered explanation, and (3) any further evidence of discrimination that may be available to the plaintiff.  *Waterhouse v. District of Columbia*, 298 F.3d 989, 992–93 (D.C.Cir.2002) (*quoting Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1291 (D.C.Cir.1998)).  The plaintiff need not present evidence in each of these categories to avoid summary judgment.  *Aka*, 156 F.3d at 1289.  Rather, the court should assess the plaintiff's challenge to the employer's explanation in light of the total circumstances of the case. *Id.* at 1291.

**B.      Discrimination Under the ADEA**

The Age Discrimination in Employment Act of 1967 ("ADEA") forbids employers from discriminating against any employee because of her age.  29 U.S.C. § 623(f)(1); *Lorillard v. Pons*, 434 U.S. 575, 584 (1978); *Hyman v. First Union Corp.*, 980 F. Supp. 38, 39 (D.D.C., 1997).  An ADEA plaintiff may utilize the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) to prove that age was a determining factor in the challenged employment decision.  *See Evans v. Atwood*, 38 F.Supp.2d 25, 30-31 (D.D.C. 1999). Under the McDonnell Douglas framework, the plaintiff must first establish a *prima facie* case of age discrimination by demonstrating:  (1) she was a member of the protected age group (age 40 or over); (2) performance at or near the employer's legitimate expectations; (3) was terminated; and (4) was disadvantaged in favor of a similarly situated younger person.  *See Mianegaz v. Hyatt Corp.*, 319 F. Supp.2d 13, 21 (D.D.C. 2004); *Hall v. Giant Food, Inc.,* 175 F.3d 1074, 1077 (D.C.Cir. 1999)  Once the plaintiff establishes a *prima facie* case, the second step of the *McDonnell Douglas* framework shifts the burden to the defendant employer to articulate a

legitimate, nondiscriminatory reason for its adverse employment action.   411 U.S. at 802, *Coburn v. Pan American World Airways, Inc.*, 711 F.2d 339, 342 (C.A.D.C., 1983).   If the defendant does so with credible evidence, then under the third step of *McDonnell Douglas* framework the plaintiff  must produce evidence showing that the defendant's proffered reason is but a pretext for discrimination.  *Id.* at 804, Coburn, 711 F.2d at 342.

### 1.        Plaintiff Has Established a *Prima Facie* Case of Age Discrimination.

Here, the record demonstrates that Plaintiff has established a *prima facie* case of age discrimination.  In particular, Dr. Brown was sixty-two ("62") at the time of her termination.  In addition, she was performing her job duties to HUH's legitimate expectations at the time of her termination as she never had any negative performance reviews and was actually commended for her expertise in graduate medical education at the time of her firing.  Furthermore, Defendant replaced Dr. Brown with Alonda Thompson, a substantially younger (in her mid-thirties) employee.

In its motion, Defendant explicitly concedes that Plaintiff meets two elements of the *prima facie* case, namely that she was over 40 and suffered an adverse employment action when she was terminated.  *See* Defendant's Motion for Summary Judgment (hereinafter "Defendant's motion") at 5.  Furthermore, Defendant does not dispute that Dr. Brown was meeting the legitimate expectations for her job at the time of her termination and it cannot.  Dr. Brown had excellent performance reviews at all times during her employment with Howard.  In addition, Defendant does not dispute that both Dr. Newton and Dr. Sealy, Dr. Brown's supervisors, valued Dr. Brown's skills, abilities, and experience.  Neither Dr. Newton nor Dr. Sealy commented negatively on Dr. Brown's performance.  In fact, at the time of her termination, Dr. Sealy acknowledged that Dr. Brown's firing was not based on her performance.

However, Defendant disputes that Dr. Brown was disadvantaged in favor of a similarly situated employee. In particular, since Defendant contends that it did not replace Dr. Brown but eliminated her position, it asserts that the comparison must be between Dr. Brown and an employee whose position was not eliminated. In that regard, Defendant argues that Ms. [Alonda] Thompson was not a *similarly situated employee* to Dr. Brown because "she [Ms. Thompson] was a junior employee whose promotion to GME A&D Manager still resulted in her being a junior employee to Plaintiff's prior position in terms of salary and responsibilities." *See* Defendant's Motion at 7-8. Essentially, Defendant claims that Ms. Thompson was not similarly situated to Dr. Brown because Ms. Thompson had a lower salary and performed different job responsibilities, even when she became the GME A&D program manager. Even if the Court accepts this as a job elimination case, Defendant's analysis is still incorrect.

To be deemed similarly situated, a plaintiff must "demonstrate that all of the relevant aspects of her employment situation were nearly identical to those of the [alleged comparator]." *Holbrook v. Reno*, 196 F.3d 255, 261 (D.C.Cir.1999) (*quoting Neuren v. Adduci, Mastriani, Meeks & Schill*, 43 F.3d 1507, 1514 (D.C. Cir. 1995). In other words, the individual with whom the plaintiff seeks to compare her treatment "must have dealt with the same supervisor, have been subject to the same standards, and have engaged in the same conduct without differentiating or mitigating circumstances that would distinguish [her] conduct or the employer's treatment of [her] for it." *Phillips v. Holladay Prop. Services*, 937 F. Supp. 32, 37 (D.D.C.1996) (*citing Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992).

Here, both Dr. Brown and Ms. Thompson dealt with the same supervisor, Dr. Sealy. Defendant's assertion that Ms. Thompson had a different supervisor is incorrect. *See* Defendant's Motion at 6-7. Ms. Thompson listed her supervisor as Dr. Sealy on her employment

application for the GME A&D position.  *See* **Exhibit 7**; Ms. Thompson's personnel file at 1.  In addition, Ms. Thompson was the program manager in Internal Medicine Residency Program under Dr. Sealy, who was the director of the Internal Medicine Program.  *See* **Exhibit 5** Transition plan; **Exhibit 7** at 2.  Ms. Thompson continued to report to Dr. Sealy after he became the DIO.  Brown Dep. at 46; *see also* **Exhibit 5** Transition Plan.  Ms. Thompson and Dr. Brown were subject to the same work standards as they both assisted with the GME programs and worked under Dr. Sealy's direction.  *Id.* Further, Dr. Brown did not have any conduct or performance issues that distinguished her from Ms. Thompson.  Finally, contrary to Defendant's assertions, Ms. Thompson's lower salary and different job responsibilities do not make her a dissimilar employee.  Practically speaking, Dr. Brown's salary and job responsibilities were not distinguishing factors in Defendant's view since HUH increased Ms. Thompson's salary and gave her Dr. Brown's job responsibilities after Dr. Brown's termination.  Specifically, the similarities between the two positions included: 1) responsibility for accreditation site visits; 2) oversight of residency or fellowship programs; 3) evaluating resident survey data 4) reviewing and updating policies in conjunction with the GMEC; 5) assisting with creating the annual report; 6) assisting residency program staff and resolving concerns identified in Internal Review or letters; 7) Serving as an institutional resource and knowledge of institutional requirements.

Moreover, because the evidence shows that Ms. Thompson replaced her the Court must compare their qualifications and experience.  *See Clifton v. Federal Nat. Mortg. Ass'n*, 36 F.Supp.2d 20, 25-26 (D.D.C. 1999); *Neuren v. Adduci, Mastriani, Meeks & Schill*, 43 F.3d 1507, 1514 (D.C. Cir. 1995).  The facts demonstrate that Dr. Brown was more qualified than Ms. Thompson was because Dr. Brown had twenty years of GME experience to Ms. Thompson's five years of experience.  Therefore, Dr. Brown should have kept her position rather being

replaced by Ms. Thompson.  Further, the fact that Dr. Brown had more experience and education than Ms. Thompson does not mean they are not similarly situated employees.  Simply, an employee outside the protected class can be less qualified as well as comparable to the plaintiff. *Purnell v. Maryland*, 330 F. Supp. 2d 551, 559 (D. Md. 2004).  Rather, it actually proves that Dr. Brown should have kept her position.  The position description for the new position required at least a Master's Degree, which Dr. Brown had.  Just because Dr. Brown had a PhD, it did not disqualify her, she did have at least a master's degree.  Furthermore, Dr. Brown had already been performing the job duties for the GME A&D Manager Position in her prior position.  In addition, Defendant's assertion that the salary of the position somehow made Ms. Brown ineligible is meritless because Ms. Brown would have certainly taken a lower salary to stay with HUH. Nothing in Defendant's motion shows how Ms. Thompson is a dissimilar employee.[17]

### 2.    Defendant's Proffered Reasons for Terminating Dr. Brown are Pre-textual and Summary Judgment Should Therefore Be Denied.

Defendant argues that it eliminated Dr. Brown's position as part of a restructuring plan because her position was duplicative of Dr. Sealy's position and her salary was too costly for HUH.  Defendant's motion at 5-6.  These are false reasons because after HUH fired Dr. Brown, Ms. Thompson assumed many of Dr. Brown's job responsibilities, and HUH paid Ms. Thompson an increased salary.  A plaintiff may prove the ultimate issue of intentional discrimination by demonstrating the falsity of Defendant's proffered nondiscriminatory explanation.  *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 147 (2000).  In addition, to prove pretext, a plaintiff need not refute every reason for termination offered by a defendant. *Id.*

---

[17] Two other comparators include Chassydi Butts and Vincent Walford because HUH eliminated the positions of these two younger employees (who were in their thirties), but gave them new positions.  **Exhibit 11** at 5.

Regarding Ms. Thompson taking on Dr. Brown's job duties, these duties included: assisting the DIO with maintaining HUH's accreditation with the ACGME, overseeing the residency and fellowship programs, responding to inquiries concerning the policy or requirements of the ACGME program, revising the GME policies & procedures, coordinating the GME institutional policies, and supervising the GME office staff.  Brown Dep. 54-64.  Thus, there were few job responsibilities, if any, that Ms. Thompson did not undertake from Dr. Brown.  Ms. Thompson started performing these job duties as of at least in March 2013, three months after Dr. Brown's firing.  To fire Dr. Brown because her position was purportedly duplicative but then to give Ms. Thompson that position with similar job duties disproves the sincerity of Defendant's reasons that the Dr. Brown's job was duplicative.  As such, this Court should find that Defendant's proffered reason that Dr. Brown's position was duplicative as false.

Furthermore, it is unbelievable that Defendant sincerely believed Dr. Brown's salary was too much of a cost to the University.  First, this is the first time Defendant has asserted this reason, as it was not cited in the Notice of Separation to Dr. Brown or in Defendant's response to Dr. Brown's EEOC complaint.  An employer's shifting rationales for the adverse employment action at issue can be probative of pretext.  *Johnson v. Dist. Of Columbia*, Case No. 1:12-cv-00381; at \*13 (D.D.C. 2015) (citing *Sw. Merch. Corp. v. NLRB*, 53 F.3d 1334, 1344 (D.C. Cir. 1995).  Second, it should be noted that Dr. Brown never demanded to be paid her salary of $125,000.  In fact, Defendant never asked Dr. Brown to lower her salary or even engaged in any salary discussions.  If Dr. Brown had the choice of lowering her salary or being fired, she certainly would have chosen the former.  However, HUH never gave her that choice.  Nonetheless, the implausibility that Dr. Brown's salary was a reason for her termination is more evidenced by the fact that HUH increased Ms. Thompson salary after firing Dr. Brown.

14

Specifically, as a program manager, Ms. Thompson's salary was $66,186.00. When she became GME A&D Manager, her salary was $84,169.00, almost a $20,000 increase. Dr. Brown's salary was around $125,000 at the time of her termination, roughly $40,000 more than the salary assumed by Ms. Thompson. Thus, Defendant claims that it could not pay Dr. Brown an additional $40,000 even though it was willing to pay Ms. Thompson an additional $20,000. This means that Defendant claims that an additional $20,000 was too costly for Defendant; caused HUH financial instability and therefore Dr. Brown had to be fired. This reason is too extraordinary to be credible.

   **3.**     **The Evidence When Viewed as a Whole Demonstrates that Defendant Discriminated Against Dr. Brown Based on Age.**

   Regardless of these facts, disputed or not, the ultimate question in this case is did HUH terminate Dr. Brown's employment because of her age. *Mianegaz v. Hyatt Corp.*, 319 F.Supp.2d 1, 19-20 (D.D.C., 2004). The record shows that Howard terminated Dr. Brown on her 62nd birthday, despite her strong work performance, and replaced her with a substantially younger individual, Alonda Thompson. In its motion, Defendant argues that Ms. Thompson did not actually replace Dr. Brown but instead Ms. Thompson took on a different position with a different job title. However, the position descriptions, Dr. Brown's deposition testimony, and Defendant's own concessions, prove that both positions had substantially the same job responsibilities and Ms. Thompson performed those job responsibilities when she took on the GME A&D manager position. Defendant also contends that it did not replace Dr. Brown with Ms. Thompson because Ms. Thompson's position was not even created until August 2013, eight months after Dr. Brown was fired. However, the sincerity of this statement is belied by the evidence that Ms. Thompson had been using the A&D program manager job title as early as March 2013, Ms. Thompson's resume indicates that she held her program manager position until

February 2013, the March 2012 restructure plan prepared by Dr. Sealy contemplated a position for Ms. Thompson with similar job duties, and Defendant posted this new position title within weeks of learning of Dr. Brown's EEOC complaint.  Moreover, Defendant states it terminated Dr. Brown as part of restructuring of the GME division because her position was duplicative and too costly.   However, as discussed earlier in this opposition motion, these reasons are implausible since Ms. Thompson assumed Dr. Brown's job duties shortly after Dr. Brown's firing and HUH increased Ms. Thompson's salary.  As such, when, as is the case here, the employer fired the employee on her 62nd birthday despite her strong performance, replaced her with a substantially younger employee, and failed to provide adequate reasons for the termination, it is appropriate for a jury to determine if age was indeed the motive.

**C.  <u>Dr. Brown was not Required to Apply for the A&D Program Manager Job to Mitigate her Damages.</u>**

In its final attempt to dismiss Dr. Brown's case, Defendant somehow contends that since Dr. Brown did not apply for the GME A&D manager position or other positions within Howard in August 2013, she cannot complain for not being considered for the position.  First, Ms. Thompson already had the position by March 2013, without it being posted.  Furthermore, Dr. Brown filed an informal complaint of discrimination against Howard in April 2013 and a formal complaint in July 2013.  Therefore, to argue that Dr. Brown should have applied for a job with the very University she was fired from and had a pending discrimination complaint against is unreasonable.  As Dr. Brown stated during her deposition, "I no longer trusted anyone here [Howard] to give me a fair break."  Brown Dep. at 68.

Moreover, Defendant's argument that Dr. Brown failed to mitigate her damages by not applying to non-higher education jobs is also unavailing.  In this district, the only issue in considering mitigation of damages is whether an employee made responsible and diligent efforts

16

to obtain a *similar employment opportunity*.  *District of Columbia v. Jones*, 442 A.2d 512, 524 (D.C.1982);   *Fogg v. Gonzales*, 407 F.Supp.2d 79, 90 (D.D.C. 2005) (finding that a claimant forfeits his right to back pay if he refuses a job "substantially equivalent" to the one he was denied, he need not go into another line of work) (citing *Berger v. Iron Workers Reinforced Rodmen, Local 201*, 170 F.3d 1111, 1133 (D.C.Cir.1999).   Dr. Brown testified during her deposition that immediately after being fired, she frequently applied to positions in higher education.  Brown Dep. at 11.  Her efforts more than meet the "reasonable efforts" standard to mitigate her loss.  *Berger*, 170 F.3d at 1133

## II.    <u>CONCLUSION</u>

For the reasons set forth herein, Plaintiff requests that Defendant's motion for summary judgment be denied.

Dated: June 25, 2015                                  Respectfully submitted,


                        _____/s/_____
                        Morris E. Fischer, Esq. Bar No. 490369
                        Michael C. Fallings, Esq. Bar No. 19389
                        Morris E. Fischer, LLC
                        1400 Spring Street, Suite 350
                        Silver Spring, MD 20910
                        (301) 328-7631 (telephone)
                        (301) 328-7638 (facsimile)
                        morris@mfischerlaw.com
                        Attorneys for Plaintiff Fannie Brown

## <u>CERTIFICATE OF SERVICE</u>

I, Michael C. Fallings, hereby certify that, on June 25, 2015, I electronically filed Plaintiff's Opposition to Defendant's Motion for Summary Judgment, Memorandum of Law in support thereof, Exhibits, Statement of Facts in Dispute, and a Proposed Order using the CM/ECF system, which will then send notification of such filing (NEF) to the following:

**Leroy T. Jenkins, Jr. (#414080)**
Deputy General Counsel
HOWARD UNIVERSITY
Office of the General Counsel
2400 6th Street, NW, Suite 321
Washington, DC 20059
(202) 806-2650
Fax: (202) 806-6357
Email: ljenkins@howard.edu


      /s/
Michael C. Fallings (Bar No. 19389)
Morris E. Fischer (Bar No. 490369)
Morris E. Fischer, LLC
1400 Spring Street, Suite 350
Silver Spring, MD 20910
(301) 328-7631 (telephone)
(301) 328-7638 (facsimile)
morris@mfischerlaw.com
Attorney for Plaintiff Fannie Brown